**In re the MARRIAGE OF Sims G. DILDY, Petitioner–Respondent,**

**and**

**Marnelle T. (Dildy) Thomsen, Respondent–Appellant.**

**No. 14734.**

Missouri Court of Appeals, Southern District, Division One.

Oct. 6, 1987.

John R. Lewis, Lewis & Stevens, P.C., Springfield, for petitioner-respondent.

Kay S. Graff, Springfield, for respondent-appellant.

GREENE, Presiding Judge.

On January 20, 1982, the marriage of Sims G. Dildy and Marnelle T. Dildy (now Thomsen) was dissolved. In the decree, Sims was awarded custody of a daughter, Christine, who was 19 years old and a college student at Oral Roberts University. A son, Sims, Jr., was 21 and emancipated. The decree ordered Sims to pay Marnelle $525 a month as maintenance until Marnelle "either remarries, dies, or until this court further modifies said decree," awarded her the family residence, divided the marital property, and awarded Marnelle attorney fees. As a part of the decree, the trial court found that Sims was receiving an Air Force Retiree Annuitant account pension and that it was a "non-marital property" of Sims.

On appeal, this court in *Dildy v. Dildy*, 650 S.W.2d 324 (Mo.App.1983), held that certain corporate stocks, which had been treated by the trial court as nonmarital property, were in fact marital property and that, by reason of the "Uniformed Services Former Spouses' Protection Act," Pub.L. No. 97–252, 96 Stat. 730 (1982) (the Act) which now appears in 10 U.S.C.A. § 1408, military retirement pay is subject to division by a divorce court in accordance with the law of that jurisdiction.

Those portions of the decree which dissolved the marriage, pertained to custody and visitation of the child, Christine, awarded Marnelle $2,500 in attorney fees, and restored Marnelle's maiden name were affirmed. All other provisions of the decree were reversed, and the cause remanded to the trial court for an evidentiary hearing on the issues of maintenance and marital property, including the issue of "what impact, if any, the Act may have on these proceedings."

After remand, Sims and Marnelle stipulated, with the exception of certain stocks listed in exhibit "A" attached to the stipulation,

1. ... that each party may retain such property as was awarded to him or her pursuant to the court's original decree of January 20, 1982, and, the parties agree that the value of said properties in the court's decree of January 20, 1982, was as follows: *Petitioner*—Fifty Thousand Seven Hundred Twenty-eight Dollars and $^{93}/_{100}$ ($50,728.93); *Respondent*—Forty-nine Thousand Nine Hundred Fifty Dollars and $^{35}/_{100}$ ($49,950.35).

They also stipulated that (1) Sims had entered military service in 1948, the parties were married in 1959, and Sims had retired from military service in 1976, and, therefore, only $^{17}/_{28}$ths of Sims' military retirement benefits were marital property, (2) that Sims "has had custody of the children born of the marriage" and had supported them since the dissolution of marriage, and that since that time had spent $48,894 for their support and education (Christine was a student at Oral Roberts University and Sims, Jr. at the University of Arkansas).

Based on the stipulation and the transcript of the dissolution action, which the parties stipulated could be used, the trial court entered a final decree, the pertinent portions of which are as follows:

The issues for decision at this time are limited to the division of marital property, maintenance for respondent, attorney fees for respondent and allocation of court costs. In deciding those issues, the court has considered many factors. However, to avoid misunderstandings, the court desires to mention several factors specifically.

The court has considered the following factors, among others: The petitioner has continued to pay $525 per month as maintenance in accordance with the original decree entered in 1982. The custody of the children continued in the petitioner and he supported the children. Petitioner has also paid college expenses for the children. The total amount of the support paid each child was stipulated to. Next, petitioner has received all of his military retirement pay since the separation of the parties, $^{17}/_{28}$ths of which is marital property, by agreement of the parties. Likewise, petitioner has re-

ceived the dividends on the shares of stock which are marital property. Petitioner also sold 400 shares of E. Systems and applied the same to the college expense of the daughter of the parties. Petitioner had a duty to account for the earnings of the marital property, he has done so, the parties have agreed to the accounting and the court has considered the accounting in reaching its conclusions herein. Consequently, the rights of respondent to a portion of the military retirement and stock dividends previously collected by petitioner are resolved and set at rest by this decree. Likewise, the right of petitioner to contribution from respondent for the support of the children and college expenses of the children is resolved herein and set at rest.

The marital property of the parties is distributed as follows:

1. That portion of petitioner's military service benefits denominated 'disability payment' is distributed to petitioner as his own sole and separate property.

2. That portion of petitioner's military benefits denominated 'military retirement' paid hereafter, beginning with the first payment in January, 1986, is distributed as follows:

a. $^{9}/_{28}$ths thereof to respondent for so long as she is living and, beginning with the first payment paid after the death of respondent, payments after the death of respondent are distributed to petitioner.

b. The balance thereof is distributed to petitioner for so long as he lives and, beginning with the first payment paid after the death of petitioner, to the respondent, if there are any such payments.

3. The following stock shall be distributed to respondent:

a. All shares of Altech;

b. All shares of Ark–La Gas;

c. All shares Southern Cal Edison;

d. All shares Standard Oil California;

4. The following shares of stock shall be distributed to petitioner:

   a. All shares E. Systems;

   b. All shares Seneca Oil;

   c. All shares Texas Instruments.

5. All other property awarded to a party under the terms of the original decree herein made January 20, 1982 and all other property in the possession of a party is distributed to such party as his or her own.

Respondent is awarded maintenance, for her support and care, as paid to her under the terms of the original decree entered January 20, 1982, which maintenance shall terminate with the payment due December, 1985. The court finds that by reason of the distribution of the military retirement pay, the respondent no longer has a need for maintenance and it is terminated.

In her appeal from this decree, Marnelle contends that the trial court erred (1) in allowing Sims credit, while assessing the relative values of the stock to be awarded to each party, one-half of the funds expended for support of Sims, Jr. because he was an adult, (2) in allowing Sims credit for one-half the sums expended for Christine's support after she became 21 years of age, (3) in allowing Sims credit for *any* amounts spent for the support of the children, and (4) in denying further maintenance payments to Marnelle, and giving Sims credit for maintenance paid from 1982 until 1985.

Our standard of review in this type of case is that the trial court's judgment must be affirmed unless there is no substantial evidence to support it, or it is against the weight of the evidence, or unless it is based on an erroneous declaration or application of law. *Ware v. Ware*, 647 S.W.2d 582, 583 (Mo.App.1983). The division of marital property by the trial court, as well as the determination of whether maintenance should be awarded to a spouse and, if so, how much, involve the exercise of judicial discretion and, absent a clear abuse of that discretion, we cannot convict the trial court of error for the way it decided those questions. *Kornberg v. Kornberg*, 688 S.W.2d 377, 379 (Mo.App.1985); *P.L.K. v. R.J.K.*, 682 S.W.2d 486, 489 (Mo.App.1984); *Reynolds v. Reynolds*, 681 S.W.2d 522, 525 (Mo.App.1984).

With these principles of review in mind, we first address the division of marital property. The parties stipulated that Marnelle was to retain property valued at $49,950.35 and Sims was to have property valued at $50,728.93. The only items left for the trial court's consideration and distribution were Sims' disability benefit of $66 a month, his retirement pay, and the corporate stocks previously mentioned.

■ In awarding Sims the disability benefit of $66 a month and 9/28ths of that portion of the retirement pension benefit that was marital property, the trial court did not abuse its discretion. Sims had been in the service for 11 years before he married Marnelle. The parties stipulated that only 17/28ths of the retirement benefit was marital property. Marnelle received 9/28ths of the retirement benefit, which was almost half of the stipulated total benefit. The stocks in question were valued by the trial court at $47,000. Since the separation of the parties, Sims had received $4000 in stock dividends. This was in accordance with the stipulation of the parties, as shown by exhibit "A." Of this amount stocks valued at approximately $36,500 were awarded to Sims, with the balance of the stocks being awarded to Marnelle which were valued at approximately $10,500. The trial court explained the disparity between the two awards (approximately $26,000 in value) in a letter to the attorneys for the parties dated December 27, 1985, which reads as follows:

Gentlemen:

   I enclose the decree which is entered.

   So that you can trace, with your clients, the Court's calculation I give you the following gross calculations.

   Half of the stock value is $23,500 and wife receives approximately $10,000. Thus, on an equal division she would be entitled to $13,500 more. Husband received $4,000 of dividend of which wife would be entitled to $2,000, if an equal division were made. Husband paid expenses for the children, 50% of which is

$24,500. $36,000 of the military retirement received by husband for the last 48 months represents ⁸⁄₂₈ths share for which the wife receives credit, but husband has paid maintenance of approximately $25,-000 during that time. Husband is obligated to pay attorney fees and court costs.

The above specific considerations will help you understand the result. The Court does not intend that a nice mathematical calculation result. The Court has given appropriate weight to the factors involved in the case and believes that the total decree is fair and equitable.

■ A disparity in the value of marital property awarded to each spouse is justified if any of the relevant factors to be considered while dividing such property justifies an unequal distribution. Those factors are (1) the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker, (2) the value of the property set apart to each spouse, (3) the economic circumstances of each spouse at the time the division of property is to become effective, and (4) the conduct of the parties during the marriage. § 452.330.

■ There is no doubt but that the economic circumstances were affected by the reason of Sims' contributions in the amount of $49,000 during the years of 1982 through 1985 for the support, maintenance, and educational expenses of the parties' two children. A similar situation existed in *Kuchta v. Kuchta*, 636 S.W.2d 663, 664 (Mo. banc 1982), where the Supreme Court said:

Thus, in total, the respondent (husband) was awarded $55,946 and the appellant (wife) $35,606, with the former being charged with the expense of providing a home and rearing the three teenaged sons, a factor for consideration under § 452.330.1(3). Being unable, with any degree of certainty, to rule that the financial obligation placed on respondent for the care of the three sons did not equal or possibly exceed the difference between the awards, we now consider

the extent to which the TWA pension was for the trial court's consideration. Such is the case here. Sims spent approximately $49,000 for the children's expenses during the timeframe in question. The trial court credited him with one-half of that amount in making the property division. We believe that Sims' efforts to see that the two children received a college education, which they did, were commendable and that the trial court in crediting him with one-half of the amount expended did not abuse its discretion.

The remaining question concerns the trial court's action in terminating Marnelle's maintenance award in the sum of $525 a month.

Section 452.335 provides that a trial court may award maintenance "in such amounts and for such periods of time as the court deems just" if the spouse seeking maintenance "(1) [l]acks sufficient property, including marital property apportioned to him to provide for his reasonable needs; and (2) [i]s unable to support himself through appropriate employment...."

■ Marnelle was awarded property worth $49,950.35. The trial court, in the present action, awarded her over $10,000 worth of stock certificates and ⁸⁄₂₈ths of Sims' retirement pay. Eight twenty-eights of the monthly retirement is $785.68 which Marnelle receives monthly which amount exceeds the prior maintenance award. She is not the custodian of a child, is a college graduate, and there is no reason shown in the record why she cannot return to the work force. We do not find any abuse of discretion on the part of the trial court in terminating the maintenance award.

There is no legal reason that would justify us substituting our judgment for that of the trial court in order to give Marnelle a little more or a little less. We are not disposed "to slip into the miry bog of judicial second guessing," *Murphy v. Murphy*, 613 S.W.2d 450, 451 (Mo.App.1981), in an effort to state what we would have done had we stood in the trial court's shoes. Our function is to determine if the trial court's judgment was based on substantial

evidence and applicable declaration and application of law. It was.

 Marnelle's contention that *all* of the retirement pay was marital property is contrary to her stipulation and to case law, and is devoid of merit, as is her contention that since Sims, Jr. was 21 years of age when he was receiving support from Sims, that fact, in some way, disqualifies such contributions from being considered as part of the economic circumstances to be considered by the trial court when dividing marital property.

Such an argument might be valid if the $49,000 Sims spent on the children had been spent on his own pleasures, but such is not the case. The trial court did not credit Sims with the entire amount expended on the children's behalf—only half of it. During most of the time the expenditures were made, Christine was a minor. Educating one's children creates diminution in assets amounting to an "economic circumstance" to be considered by the court when dividing marital property.

The trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or application of law. We find no abuse of discretion on the part of the trial court in making that ruling in question.

Judgment affirmed.

MAUS, J., concurs.

HOLSTEIN, J., concurs and files concurring opinion.

CROW, C.J., recused.

HOLSTEIN, Judge, concurring.

I concur. As pointed out in the majority opinion, § 452.330 RSMo 1986 allows the trial court to consider the economic circumstances of each spouse in making a division of marital property. I do not believe that provision authorizes a trial court to take into consideration, as an economic circumstance, sums voluntarily expended by one spouse for support and education of a healthy, adult child. The economic impact of such expenditures, however commend-

able they may be, should not be involuntarily imposed on the other spouse by way of a division of property. To do so is to transmute a moral obligation into a legal obligation.

However, considering other factors involved in the case, including the conduct of the parties and the contribution of each spouse to the acquisition of the marital property, the trial court's ultimate division of marital property was not an abuse of discretion.