**M. Lynne HAGAR, Appellant,**

v.

**Robert J. HAGAR, Respondent.**

**No. WD 37853.**

Missouri Court of Appeals,
Western District.

Jan. 13, 1987.

William M. Quitmeier, William M. Quitmeier & Assoc., Kansas City, for appellant.

Roy W. Brown, Bruce B. Brown, Brown & Brown, Kearney, for respondent.

Before GAITAN, P.J., and TURNAGE and MANFORD, JJ.

TURNAGE, Judge.

M. Lynne Hagar brought this suit to dissolve her marriage with Robert J. Hagar. The court ordered the marriage dissolved and divided the marital property, except that it left the title to the real estate vested in the parties as tenants in common. Lynne appeals and contends the court failed to make an equal division of the property and failed to award her maintenance and her full attorney's fees. Affirmed in part, reversed and remanded in part.

The parties had been married about 25 years at the time of trial. There were two children born of the marriage—an eleven year old son and an emancipated child.

Robert was employed as chief mechanic at Owens Illinois Plastic Company with take home pay of $317 per week, exclusive of overtime. At the time of trial Lynne did some part-time sewing, babysitting, and beautician work, which gave her an average income of $172 per month. At trial time Lynne was taking a course to become a dental assistant, and she expected to go to work as a dental assistant within about four months after trial. She estimated she would earn between $800 and $1000 per month with her new skill. The court awarded each party $13,700, representing one-half of a savings account. In addition the court awarded Lynne $3,500 from checking and savings accounts. The court awarded Robert $3,000 from those accounts.

The parties owned a residence in Gladstone, which the court found to be worth $42,500. There was no serious dispute as to the value of the home. At the time of trial it was subject to an encumbrance of $5,290, with a monthly payment of $138 for principal, interest and tax escrow.[1] The court ordered the title to the residence to be vested in the parties as tenants in common, with each to have an undivided one-half interest. The court ordered that Lynne be allowed to live in the residence with the son until the child became emancipated or attained his majority, so long as an adult male to whom Lynne was not

---

1. Lynne had a brother who lived in her home and paid her $200 per month rent. Robert raised no objection to that arrangement.

related or married did not reside in the home. The court ordered that the residence be sold on the occurrence of any of the conditions placed on Lynne's occupancy and gave Lynne the option to purchase Robert's one-half interest within 60 days of the event triggering the sale. In the event Lynne chose to buy the house, the court ordered that it be appraised and that Lynne pay one-half of the appraised value, less real estate commission, title policy, and normal closing expenses. The court ordered Lynne to pay the full amount of the encumbrance on the residence.

■ Lynne complains that the court did not award her any maintenance, but did award $1,000 for her attorney fees. The trial court has a wide latitude in decreeing maintenance, and its exercise of discretion will not be disturbed, unless the court abused its discretion. Although Robert was making more than Lynne at the time of trial, Lynne expected to begin earning between $800 and $1,000 a month within a short time. It is the policy of this state to encourage spouses to become self-sufficient. In view of Lynne's immediate prospect of going to work as a dental assistant, the court did not abuse its discretion in refusing to award maintenance to her. *See Gonzalez v. Gonzalez*, 689 S.W.2d 383, 386[8] (Mo.App.1985).

Lynne also complains that the court should have awarded her more than $1000 in attorney's fees. Again, the trial court is vested with a broad discretion in the matter of awarding attorney's fees to a party. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919[7] (Mo. banc 1979). No abuse of discretion appears in this case.

■ Lynne also contends that the court erred in failing to divide the property so that the total value received by each party would be equal. The total value assigned to Lynne, taking into account her obligation to pay the entire encumbrance on the home was $41,900. The value of property assigned to Robert was $48,000. Lynne mistakenly contends the court was required to divide the property equally. On the contrary, the court was required to make a fair division, not necessarily an equal one. *See Gonzalez*, 689 S.W.2d at 386[5].

■ Lynne complains in particular that she was ordered to pay the entire encumbrance on the real estate. Section 452.330.-1(3), RSMo 1984 Cum.Supp., directs the court to consider the desirability of awarding the family home, or the right to live therein, to the spouse having custody of any children. Here, the court properly allowed Lynne to live in the family home until such time as the son attained his majority or became emancipated.

It is apparent the court intended to divide the residence equally, but to require Lynne to make the payments while she was living there. However, the court overlooked the fact that it is improper to leave real estate vested in the parties jointly after a dissolution. *Buthod v. Buthod*, 624 S.W.2d 119, 121[2] (Mo.App.1981). Further, the court failed to provide for credit for payment of taxes, repairs, maintenance, and insurance.

To carry out the court's intent to divide the residence equally and to comply with *Buthod*, the court should amend its decree with reference to the division of the real estate to provide for the following:

1. The title to the residence should vest in Lynne, with the right to live in the home until the earliest of the following events: the son attains his majority or becomes emancipated, Lynne ceases to live in the home, or a male neither related to nor married to Lynne resides in the home.

2. A lien on the house should be declared in favor of Robert.

3. While Lynne lives in the house, she should make all payments of principal and interest and tax escrow on the encumbrance, insure the house, and maintain the house in a reasonably good condition. If Lynne should default on these obligations, Robert would be entitled to make all such necessary payments.

4. Upon the occurrence of any of the conditions terminating Lynne's right to live in the home, the home shall be sold

for the best price obtainable, unless Lynne elects to purchase Robert's half interest at the appraised price of the home within 60 days.

5. If Lynne elects to purchase the house, there shall be deducted from the appraised value any balance due on the current encumbrance; the cost of her title policy; all amounts paid since the decree for taxes, repairs and maintenance, and insurance; and normal closing costs. Lynne shall pay Robert one-half of the balance, and Robert's lien shall be extinguished.

6. If Lynne does not purchase the home, there should be deducted from the sale proceeds: a) the cost of the sale; b) the balance due on the encumbrance; and c) the total amount paid since the date of the decree for taxes, reasonable repairs and maintenance, and insurance. The amounts listed as items a), b) and c) shall be paid to the person having paid the expense represented by each such item. The balance of the sale price remaining after deducting items a), b), and c) shall be divided equally between Lynne and Robert.

The judgment is affirmed, except that part relating to the real estate on which the residence of the parties is located. As to that portion, the judgment is reversed and this cause is remanded with directions to enter a decree incorporating the directions contained herein.

All concur.